

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 13, 1969

Messrs. Ned Price and Durwood Manford          Opinion No. M -446
Members, State Board of Insurance
Insurance Building
Austin, Texas                                  Re:   Investment Income as a
                                                     Factor in Computing Pre-
                                                     mium Rates for Auto-
Gentlemen:                                            mobile Insurance

        You have recently requested an opinion of this office on the follow-
ing questions:

1.      Is the Board authorized or required by law to con-
        sider or include in its automobile rate-making formula
        or premiums the overall countrywide investment income
        of the insurers from all sources in prescribing and promul-
        gating rates of premium?

2.      Is the Board authorized or required by law to consider or
        include in its automobile rate-making formula or premiums
        the overall investment income of insurers attributable to
        their business done in Texas in prescribing and promulgat-
        ing rates of premium?

3.      Is the Board authorized or required by law to consider or
        include in its automobile insurance rate-making formula
        or premiums the overall countrywide investment income
        of the insurers attributable to their automobile insurance
        premiums in prescribing and promulgating rates of pre-
        mium?

4.      Is the Board authorized or required by law to consider or
        include in its automobile insurance rate-making formula
        or premiums the investment income of the insurers at-
        tributable to their Texas automobile insurance premiums?

Article 5.01, Texas Insurance Code provides, in part, as follows:

". . . The Board shall have the sole and exclusive power and authority, and it shall be its duty to determine, fix, prescribe, and promulgate just, reasonable and adequate rates of premiums to be charged and collected by all insurers writing any form of insurance on motor vehicles in this State, including fleet or other rating plans designed to discourage losses from fire and theft and similar hazards and any rating plans designed to encourage the prevention of accidents. In promulgating any such rating plans the Board shall give due consideration to the peculiar hazards and experience of individual risks, past and prospective, within and outside the State and to all other relevant factors, within and outside the State. The Board shall have the authority also to alter or amend any and all of such rates of premiums so fixed and determined and adopted by it, and to raise or lower the same or any part thereof. "

Article 5.03, Texas Insurance Code provides as follows:

"On and after the filing and effective date of such classification of such risks and rates, no such insurer shall issue or renew any such insurance at premium rates which are greater or less than, or different from, those approved by the Board as just, reasonable, and adequate for the risk to which they respectively apply, and not confiscatory as to any class of insurance carriers authorized by law to write such insurance. "

Article 5.04, Texas Insurance Code reads:

"To insure the adequacy and reasonableness of rates the Board may take into consideration past and prospective experience, within and outside the State, and all other relevant factors, within and outside the State, gathered from a territory sufficiently broad to include the varying conditions of the risks involved and the hazards and liabilities assumed, and over a period sufficiently long to insure

that the rates determined therefrom shall be just,
reasonable and adequate, and to that end the Board
may consult any rate making organization or asso-
ciation that may now or hereafter exist. "

The basic consideration on which all four questions here presented
are based is whether the State Board of Insurance is either authorized or
required to consider in its automobile rate making formula various types
of investment income realized by the insurers from some or all of their
investments. Because of the nature of our answers to these questions they
all may be considered together.

Review of the above quoted sections of the Insurance Code makes it
readily apparent that no specific reference is made to either the inclusion
or exclusion of investment income of the insurers in the Board's establish-
ment of adequate and reasonable rates. It is clear, however, from the
language of Article 5. 01 that the Board shall have the sole and exclusive
power and authority to prescribe just, reasonable and adequate rates of
premiums to be charged for automobile insurance in Texas. These are the
general guidelines the Board is to follow in establishing the rates. Article
5. 03 provides that such rates shall not be confiscatory as to any class of
insurance carriers.

There seems to be no question that rate making is a legislative
function, and in this case is to be performed by an administrative body, the
State Board of Insurance. Brown & Root v. Traders & General Insurance
Co., 135 S. W. 2d 534 (Tex. Civ. App., 1940, error dism., judgm. cor. );
Associated Indemnity Corp. v. Oil Well Drilling Co., 258 S. W. 2d 523 (Tex.
Civ. App. 1953, affirmed, 153 Tex. 153, 264 S. W. 2d 697. )

In the latter decision the Dallas Court of Civil Appeals stated:

"It cannot be disputed that the legislature originally
intended to leave the details of rate making to a rate-making
body, such as the Board . . .

". . .

"The Board's rate-making powers are legislative
in character; hence its orders fixing rates must be sub-

jected to the same tests under the 'equal protection'
clause as an enactment of the Legislature itself. "

The Insurance Code was first enacted in 1927.   Articles 5.01 and
5.04 were amended in 1953 by H. B. No. 32, Acts of the 53rd Legislature,
Regular Session.   At that time the words "and all other relevant factors, "
among other things, were added to the Articles.

The words "all relevant factors" were by H. B. No. 32 added to
Article 5.01 in the second sentence of the second paragraph of that Article.
This sentence is as follows:

> "In promulgating any such rating plans the Board
> shall give due consideration to the peculiar hazards and
> experiences of the individual insurers, past and pro-
> spective, within and outside the state and to all other
> relevant factors, within and outside the state. "

It thus appears that the words "all relevant factors" as are used
in Article 5.01 apply only to rating plans and not to the general automobile
insurance premium formula.

As previously observed, the words "all relevant factors" were also
added, among other things, to Article 5.04 in 1953.   The Legislature has
directed that the Board may take into consideration to insure the adequacy
and reasonableness of rates past and prospective experience within and out-
side the state and all other relevant factors.   Therefore, it is apparent
that the Board has wide discretion in its determination of what are all other
relevant factors and in fact may or may not include in its consideration such
factors.   In Virginia, the Supreme Court of that state, in reviewing a rate
set by the rate fixing board, concluded from the evidence before it that in-
come from investment of the loss reserve, as well as from investment of
the unearned premium reserve, was a relevant factor in fixing a reasonable
margin for underwriting profit and contingencies. Virginia State AFL-CIO
v. Commonwealth of Virginia, et al, 167 S. E. 2d 322 (Va. Sup. 1969).

We are of the opinion, therefore, that our Legislature has delegated
to the State Board of Insurance the legislative function of rate making.   By
Articles 5.01 and 5.03 it has directed the Board to fix just, reasonable and

adequate rates which are non-confiscatory. By Article 5.04 the Legislature has stated that in arriving at just, reasonable and adequate rates which are not confiscatory the Board is authorized to consider, among other things, all other relevant factors. If the Board determines a factor to be relevant for consideration in arriving at a just, reasonable and adequate rate which is not confiscatory, it has the authority to consider such factor. But this is the sole and exclusive power and authority of the Board by virtue of its legislative rate-making authority. It is not for this office to determine what is a relevant factor for the Board's consideration in the exercise of its legislative powers. Section 1, Article II, Constitution of Texas.

## SUMMARY

The fixing of automobile insurance rates by the State Board of Insurance is a legislative function, delegated to it by the Legislature, and it has the sole power and exclusive authority to determine a fair and just rate, and to give due consideration to such factors as they may determine, from the evidence before them, to be relevant.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Sam Kelley
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
W. O. Shultz
Harold Kennedy
John Grace
Alfred Walker

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant